TERRITORY OF MONTANA, ON THE RELATION OF THE BOARD OF COMMISSIONERS OF THE COUNTY OF CHOTEAU, RESPONDENT, *v.* THE BOARD OF COM-MISSIONERS OF THE COUNTY OF CASCADE, APPELLANT.

MANDAMUS — *Act creating Cascade County construed* — *As to liability of county for neglect of duty by its commissioners.* — By an act of the extra session of the Fifteenth Legislative Assembly, approved September 12, 1887, the county of Cascade was created by taking certain portions of territory from the counties of Lewis and Clarke, Meagher, and Choteau. Section 2 of said act, in so far as it pertained to Choteau County, was substantially as follows : " To the county of Choteau, the said county of Cascade shall be liable for and shall pay the sum of thirty thousand dollars . . . . ; and it is hereby made the duty of the county commissioners of the county of Cascade to cause to be issued at their first regular session to said Choteau County, a warrant or warrants on the general fund for the amount to which said Choteau County is entitled as aforesaid, which said warrants, if not paid on presentation to the treasurer of said county of Cascade, shall be by him indorsed ' not paid for want of funds,' and shall thereafter bear like interest as other county warrants, or the said commissioners may issue coupon bonds of said county, bearing interest at not more than six per cent per annum, payable in seven years, and due in fifteen years, in payment of said debt, and to pay current expenses for the first year. Said bonds shall not be sold for less than par, and shall be issued as near as may be in conformity with the general law." The record on appeal showed that no action in respect to a payment of said indebtedness had been taken by the commissioners of Cascade at their first regular session in March, 1888 ; and also that they failed to act in the premises at their next regular session in June, 1888, although a demand was made upon them by Choteau County. A suit was instituted for a writ of man-date ; and a general demurrer having been interposed and overruled, a judg-ment granting the writ was rendered in favor of the plaintiff. The writ of mandate directed that at their first regular session after its service upon them the commissioners of Cascade should make election as to the mode of paying Choteau ; and in accordance with their choice, should either deliver general fund warrants to Choteau, bearing seven per cent interest from date, and to be dated and registered as of March 8, 1888, or, in the event of their electing to issue coupon bonds, should deliver warrants for the amount of the indebted-ness, bearing the same rate of interest, and from the same date as the above described warrants, which should be drawn upon and paid from the sum realized on the sale of said bonds. It was objected by the defendant, that the writ improperly took away from the commissioners of Cascade their authority under said section 2 of paying Choteau, by delivering either warrants or bonds ; and also that the writ should not have allowed interest. *Held,* that the act did not contemplate that payment to Choteau County could be made by the delivery of bonds. *Held, also,* that in failing to make an election at their March session between payment by warrants and payment by the issuance and sale of bonds for that purpose, under the general law governing county bonds, the commis-sioners of Cascade were guilty of a violation of a plain and imperative mandate of the statute ; but that while a county is a corporation for many purposes, and its functions are exercised mainly through its board of commissioners, still, when the law itself (as in this case by the very terms of the act creating Cascade) imposed upon its commissioners as public officers a duty which they failed to

perform, the rule of *respondeat superior* did not apply, and Cascade County could not be compelled to pay interest until an election had been made to pay the debt in warrants, and the same had been issued and registered as the act provided.

SAME — *Fees of county attorney — Section* 847, *division* 5, *Compiled Statutes, construed.* — A writ of mandate having been granted to compel the payment of money due a county, certain county attorney fees were taxed as costs in the judgment under section 847, division 5, Compiled Statutes. *Held,* that the taxing of such costs was proper in the proceeding; and that under said section the county attorney was entitled to receive twelve hundred dollars, less the amount of fees he had already been paid by his county.

*Appeal from the Fourth Judicial District, County of Meagher.*

The opinion and *syllabus* sufficiently state the case.

*Wade, Toole & Wallace,* for Appellant.

It might be contended that bonds are not a payment, but the same suggestion would apply with equal or greater force to a warrant. Rather should it be said that as a warrant is not a cash payment, the act did not contemplate a direct cash payment in either instance. More especially is this true when we find a total lack of any provision in the act for the proceeds of any sale of bonds, or as to how or in what manner these proceeds should be turned over to Choteau County. This very difficulty the court below encountered, and sought to evade by the creation of a special warrant drawn against a fund to be created in the future, a proceeding wholly unauthorized either by the spirit or letter of the act. Nor is there any more force in the argument that Choteau County has no power to receive or sell bonds. Our general laws (Comp. Stats. Mont. § 744, p. 842) clearly empower any county to hold, receive, or purchase bonds or other personal property necessary to its uses; to sell the same, and to exercise any other and further powers conferred by law. Again, if, as the court below directed in the writ, a warrant could be issued in anticipation of the sale of bonds, then (as by the last clause of the preceding section of this act, all general laws applicable to other counties are made applicable to Cascade), under the provision of the general law (Comp. Stats. Mont. § 786, et seq. pp. 854, 855), they could at any time issue bonds to pay the warrants off, and so the language, "or the said commissioners may issue coupon bonds," etc., would be meaning-

less; whereas, under the other construction, it would confer a power of receiving and selling the bonds on Choteau County, which it could not otherwise have possessed; and it is the plain duty of a court to so construe this section as to, if possible, give effect to all the parts. The court below had no right to direct the warrants to be issued, dated, and registered, and bear interest from March 8, 1888. This debt is created by virtue of the act alone. Hence no more money can be taken from Cascade, directly or indirectly, than is ordered to be paid by the terms of the act itself. (*Laramie County* v. *Albany County*, 92 U. S. 307.) And the legislature having created the debt, it has entire control both of the manner and means of its payment. (*Sharp* v. *Contra Costa County*, 34 Cal. 291.) Here the legislature has done both, and provides that the sum of thirty thousand dollars shall be paid without interest, except (in the event they elect to pay by a general fund warrant) if on presentment to the treasurer of Cascade County it be indorsed and not paid for want of funds, then, from the date of such indorsement, it is to bear seven per cent interest. Yet, by the writ, they are compelled to pay seven per cent from a date prior to the close of the board's first meeting, during the whole of which they could consider which of the two modes of payment they would adopt. If they paid in bonds direct, they could not bear over six per cent from date of issuance, while, if from proceeds of sales, then clearly they would pay but thirty thousand dollars, as no means is provided or reference made to payment of interest during a period necessary to effect a sale. This writ, then, in effect, requires the payment of a greater debt than the act. A vindication of this mandate of the writ could only be attempted on the theory that the officers constituting the board of commissioners were guilty of non-feasance in not acting at their March session. And under such circumstances, nothing is better settled than that the county or other municipal corporation cannot be held liable for a violation or neglect of duty by its officers. (Cooley on Torts, p. 621; *City of Richmond* v. *Long*, 17 Gratt. 378; 94 Am. Dec. 461; *County Commrs.* v. *Duckett*, 20 Md. 468; 83 Am. Dec. 566, last note; *Stewart* v. *New Orleans*, 9 La. An. 461; 61 Am. Dec. 218; *Lloyd* v. *Mayor of New York*, 1 Seld. 369; 55 Am. Dec. 347; *Lorillard* v. *Town of*

*Monroe,* 11 N. Y. 395; 62 Am. Dec. 124, n.; *Chumasero* v. *Potts,* 2 Mont. 242.) For case squarely in point, see *People* v. *Tweed,* 13 Abb. Pr. N. S. 77, referred to in 62 Am. Dec. 124, n. Again, this is a special proceeding to procure a mandate to compel the enforcement of a duty imposed by law, and not an ordinary action for damages sounding in tort, and the ultimate remedy that can be given in this proceeding is to compel what the law directs. When this is done, if a general warrant should be issued and delivered, it must still be presented by Choteau County to the treasurer of Cascade County, and indorsed, before it will bear interest. Again, how can the court below direct a registering of the warrant of any date, the treasurer, upon whom the duty was imposed by law, not being a party, or how was the court to know that it would be necessary to register, and that it would not be paid on presentation? The writ improperly directed the issuance of a warrant in the event of the second alternative of payment being adopted. The act clearly contemplates that there should be no interest in the event of the second alternative being adopted; and that is so whether there was a delivery of the bonds or of their proceeds. Regarding the matter for a moment from the latter standpoint, time would necessarily be consumed in effecting the sale of the bonds. Yet, no provision was made for interest during such period. Provisions having been made for interest on the general fund warrant, under the doctrine *expressio unius est exclusio alterius,* none could have been intended here. In conclusion, the act only contemplates interest in two instances; *first,* on the bond; and *second,* on the general fund warrant after presentment and indorsement "not paid." The second appeal presents the propriety of an item of costs submitted by relator in its memorandum of costs, and moved to be stricken out by respondent, in the sum of $1,582.85, as county attorney fees, under section 847, page 870, Montana Compiled Statutes, which allows fees upon "collections" of "sums of money" only. Upon this appeal we contend, that the county attorney's fees are in no event taxable as costs in this proceeding; that it was the duty of Choteau County to make a showing in the first instance, so that the court could see what amount, if any, was taxable; and that the order directing a subsequent affidavit to be filed, by which affidavit the amount

of costs was to be determined and irrevocably fixed, was erroneous. Had the affidavit been filed in the first instance, we could have met it by affidavits filed with our motion to retax. But by the action of the court we were precluded from controverting an affidavit made a part of its order. And for the purpose of showing injury, we have filed and brought up the affidavit of the county clerk of Choteau County, showing a larger amount of fees received. (See Record.) As to the taxability of these attorney's fees in any event, only such costs can be taxed as are expressly warranted by the statute. And all statutes providing for a taxation of costs are strictly construed.. (*Toms* v. *Williams,* 41 Mich. 552; *State* v. *Kinne,* 41 N. H. 238.) The county attorney is only allowed fees upon "collections of sums of money." (Comp. Stats. Mont. § 847, p. 870.) Strictly construed, this would mean. money, and nothing else. The word "collections" in the act is limited to moneys actually paid into the treasury, or at least actually collected. For decisions as to the legal meaning of this word "collections," see *Rawlins* v. *Poindexter,* 27 Miss. 64; *Dyer* v. *Gibson,* 16 Wis. 557; *French* v. *Marsh,* 29 Wis. 649. Could. the county attorney, by simply taking judgment upon a bail recognizance, and before collecting the same, claim fees of his own county as for a collection? We think not. He gets a fee only on "collections of sums of money." Until there has been a collection, there can be no fee, and until there is a fee, there can be none taxed as costs. Hence the proviso, while apparently general, can only apply to those items of fees which follow collections of money. This is a special proceeding in the nature of an action to procure a writ of mandate. The general laws defining costs are found on pages 192 and 193, Compiled Statutes, sections 494, 496, and 497. And even without any special section in the mandate law regulating the matter of costs, they would be allowed under the fourth division of section 495, *supra.* But as to this proceeding for a writ of mandate, there is a special provision as to its costs (§ 576, p. 208), and as a special provision always controls a general one on the same subject, this latter section exclusively regulates the matter of costs so far as *mandamus* proceedings are concerned. Again, in providing specially for a recovery of "costs" in connection with damages, by the use of

the word "costs" can only refer to those items which were defined by statute to be costs at the time of the passage of the *mandamus* law; and that the statute, as it then was, did not cover attorney's fees. (See 38 Cal. 80.) And while section 847, page 870, might operate upon actions in general, it could have no application to section 576, page 208 (of the *mandamus* law), without an express amendment of the latter section. Upon the proposition we beg to submit as an authority squarely in point, *Hedges* v. *Commrs. of Lewis and Clarke County,* 4 Mont. 280.

*S. H. McIntire,* and *H. G. McIntire,* with whom were *Carpenter, Buck & Hunt,* as counsel, for Appellant.

The county of Choteau cannot be compelled to receive Cascade County bonds in payment of the sum for which Cascade County is liable to the county of Choteau. (Laws of Extra Session, 1887, p. 106, § 2.) If Cascade County could make payment by delivery of its bonds to Choteau County, it could fix the rate of interest at one per cent, and Choteau County would be unable to sell them or realize upon them the amount of the indebtedness. Such wrong was not intended by the legislature. A statute should not be so construed as to lead to palpable injustice or absurdity. (*Knowles* v. *Yeates,* 31 Cal. 83; Endlich on Int. of Stat. §§ 258, 264.) The last clause of said section 2, to wit, "Said bonds shall not be sold for less than par, and shall be issued as near as may be in conformity with the general law," shows plainly the intention of the legislative assembly to be, that if Cascade County issued bonds, it should sell them, and from the proceeds pay the debt to Choteau County. The bonds authorized to be issued by Cascade County, at the option of the county commissioners, not only may not be delivered to Choteau County as payment of the debt, but they must be advertised and sold to the highest bidder, in conformity with the general law. (Comp. Stats. p. 859, § 810.) To issue bonds as "near as may be in conformity with the general law," means to follow the general law wherever the act creating the county of Cascade does not conflict with it. The words "in payment" in said section 2 do not mean "as payment," but "for the purpose of paying." Section 744, page 842 of the Compiled Statutes, has no application to this case, and the bonds provided for by the

Cascade County act are different from those authorized by the general laws referred to by appellant. The issue of coupon bonds by Cascade County could only be made at or before the first regular session of the board of county commissioners of that county. By said section 2 it was the duty of the county commissioners of Cascade County at the first regular session to cause to be issued a warrant for the payment of the indebtedness to Choteau County. But the law further gives to the commissioners of Cascade County the option before or at that session to issue coupon bonds sufficient for the proceeds thereof to pay said thirty thousand dollars, etc. The choice of methods of payment was limited in time to the first regular session, and could not be exercised afterwards. Even though bonds were issued and sold for the purpose of paying the debt to Choteau County, the proceeds of such bonds would have to be deposited in the county treasury, under section 891, page 880, Compiled Statutes, and payments therefrom would have to be made by warrant; but in that case the warrant would be paid from the fund realized from the sale of the bonds, and there could be no delay in the payment. It would be substantially a cash transaction. The court below, in permitting the Cascade County commissioners to elect at a date later than that prescribed by statute whether or not to issue bonds, allowed a benefit to that county of which it cannot complain. Interest is due from Cascade County to Choteau County on said thirty thousand dollars from the end of said first regular session of the Cascade County commissioners. The law does not recognize the right of the county of Cascade to profit from the negligence of its officers. This is not the case of a county sought to be made "liable for a violation or neglect of duty by its officers," and appellant's authorities on that proposition are certainly not in point in this case. The liability was created by statute. No law or principle can be found that will release Cascade County from this liability on account of the neglect of its own officers to cause the issue of warrants, or to issue bonds. Any different doctrine would afford an easy way for a State, city, or county to escape payment of lawful debts. In order that the county treasurer of Cascade County be required to register the warrants as of March 8, 1888, it is not necessary that he should be a party to this action or

proceeding. The county of Cascade is fully represented by the county commissioners. Considerable stress is laid by appellant on the point that inasmuch as the defendant board was in session until March 9th, the judgment in directing interest to run from March 8th is erroneous; but on this point we submit that if the judgment is too broad in any particular, it may be modified by this court. (Comp. Stats. p. 179, § 441.) Section 847, page 870 of the Compiled Statutes, provides that the county attorney shall receive "the following fees: For collections made for the county on all sums of five hundred dollars or less, ten per cent thereof; on all sums over five hundred dollars, ten per cent on the first five hundred dollars and five per cent on the excess over five hundred dollars," etc. It also provided that all fees provided for in the section shall be taxed as costs. Whenever, therefore, a county brings an action by its county attorney and recovers judgment, such of the fees as it is liable for therein to its county attorney becomes a part of the costs of the action, follow any judgment it may recover, and must be taxed as such costs against the losing party. (See *People* v. *Hagar*, 52 Cal. 190; *Higby* v. *Calaveras County*, 18 Cal. 176.) What the form may be of such an action is immaterial. It is not to be supposed that the county attorney's right to compensation is dependent upon the form of the action he is engaged in. What the statute contemplates is a proceeding whereby the county's claim might be realized. (*Higby* v. *Calaveras County*, 18 Cal. 176.) The construction placed by the appellant on the word "collection" in this statute is altogether too narrow. The payment by a county of a claim in warrants is in effect a payment in money. (*Higby* v. *Calaveras County*, 18 Cal. 176.) The costs in question are by virtue of section 847. Section 576 does not specify what costs should be paid in *mandamus* proceedings. It, as well as section 494, page 192, clearly contemplates recovery of costs by the prevailing party in the proceedings mentioned, and by reference to the other statutes on the subject, what those costs are is to be ascertained. Damages, if any, for the failure to do the duty for which a *mandamus* proceeding is instituted, are seldom or never sought in the same proceeding, and yet appellant contends that unless there be a recovery for damages there can be no costs. Section 847, to the extent of the fees

therein provided for, is an amendment of the entire subject of costs. The costs in *mandamus* are as much within the scope of this amendment as those in any other action or proceeding. Wherein 4 Mont. 280, cited by appellant, militates against this view, we are unable to see. Under section 847 the costs allowable in this proceeding should have been the full percentage provided for therein on the amount recovered. The construction placed on said section by the lower court is not in harmony with this view, and, as we think, is not warranted by it. The entire amount of costs in all actions is due and should be allowed the plaintiff county. If they exceed twelve hundred dollars, then a question as to the disposition of the surplus might arise between the county and its attorney, but surely not between the county and its judgment debtor. For this reason we think the court below erred, but as such error is in favor of appellant, it should not complain. Any further affidavits than the memorandum of costs originally filed were unnecessary, and are certainly harmless to appellant. What bearing the certificate of the county clerk of Choteau County, as to the compensation received by the attorney of that county for the entire year of 1888, has on this case we fail to see. This certificate does not show a larger amount received at the time than the attorney's acknowledgment under oath. But said certificate is no part of the record; it was never used on the motion to retax; in fact, had no existence until long after said motion was heard and decided.

McCONNELL, C. J.—This was an action brought by the respondent for a writ of mandate to compel the appellant to perform a duty imposed upon it by the second section of an act, entitled an act to create the county of Cascade, and to define its boundaries, and provide for its organization, passed at the extra session of the Fifteenth General Assembly of this Territory, and approved September 12, 1887. The transcript contains two appeals, one from a final decree directing the issuing of a writ of mandate, and the other from an order after final judgment upon motion of the appellant to retax costs. The appellant demurred to the petition for the writ of mandate upon the ground: "*First*, that the same does not state facts sufficient to constitute a cause of action; *second*, that the same does not

state facts sufficient to warrant the issuance of the warrant prayed for, in that the discretion required to be exercised under the act by the respondent board was to pay either in warrants or bonds, and it appears upon the face of the petition that the discretion had been legally exercised by the respondent board tendering payment in bonds as required by law, and the relator wrongfully refused to receive the same." The last ground of demurrer cannot be considered, because it raises a question of fact which does not appear upon the face of the petition. The points relied upon by the appellant are: *First*, that the act authorizes payment by bonds issued directly to Choteau County, and the writ denies this privilege, and as the petition shows no default in this respect, the writ should have been denied; *second*, the writ improperly directs the warrants to be dated, registered, and to bear interest from March 8, 1888; and *third*, the writ improperly directed the issuance of a warrant in the event of the second alternative of payment being adopted.

Said section 2, out of which this contention arises, is as follows, to wit: "That the present indebtedness of the counties of Choteau and Meagher shall be apportioned between said counties, respectively, and said county of Cascade, as follows, to wit: To the county of Choteau the said county of Cascade shall be liable for and shall pay the sum of thirty thousand dollars, and to the said county of Meagher the county of Cascade shall be liable and shall pay the sum of six thousand dollars, which said sums shall be in full of all claims and demands against said county of Cascade, for or on account of its proportion of the present indebtedness of said counties, respectively; and it is hereby made the duty of the county commissioners of the county of Cascade to cause to be issued at their first regular session to each of said counties a warrant or warrants on the general fund of said county for the amounts to which they may be respectively entitled as aforesaid, which said warrants, if not paid on presentation to the treasurer of said county of Cascade, shall be by him indorsed 'not paid for want of funds,' and shall thereafter bear like interest as other county warrants; or said commissioners may issue coupon bonds of said county bearing interest at not more than six per cent per annum, payable in seven years, and due in fifteen years, in payment of said debt, and to pay

current expenses for the first year. Said bonds shall not be sold for less than par, and shall be issued as near as may be in conformity with the general law." As the main question presented by the demurrer depends upon the construction to be given to said section 2 of the act to organize Cascade County, we will consider it first. It is contended by the appellant that said section gives the county commissioners of Cascade County the right to elect whether they will pay the indebtedness of their county to Choteau County by issuing coupon bonds and turning them over in payment, or drawing county warrants upon the general fund.

The question is, have they this power under section 2? We think they have not. The act itself does not provide that the bonds shall be turned over to Choteau County. The language used in the act, "in payment of said debt," coupled with the succeeding clause, "and to pay current expenses for the first year," shows manifestly that the legislature intended to put payment of the current expenses of the new county for the first year upon a like footing with the payment of the debt to Choteau County; and no one will contend that the legislature ever meant coupon bonds to be issued and turned over in kind, in payment of the current expenses of the county. The new county was to derive territory, population, and property from the mother county, and the legislature, acting as a kind of *pater familias* between the mother and daughter, enacted that the just and equitable proportion of the debt of Choteau County which the new county should bear was the sum of thirty thousand dollars. It is true that in the absence of such legislation the new county would not be bound in law for any part of said debt. (*Laramie County* v. *Albany County*, 92 U. S. 307.) But the act which declared that Cascade County should pay thirty thousand dollars had the effect of converting a moral into a legal obligation, and to liquidate the accounts between them at that amount. It then became an indebtedness in as full a sense as if it had arisen by contract between the parties. The language used is: "To the county of Choteau, the said county of Cascade shall be liable for and shall pay the sum of thirty thousand dollars." It thus creates a debt to be paid in money. But the legislature, in view of the fact that a county can only raise money by taxation or

the sale of its bonds, proceeds to direct how this debt may be paid, *first*, in the discretion of the county commissioners, by issuing warrants upon the general fund to be raised by taxation; or *secondly*, by issuing coupon bonds and selling them, and thus raising the money with which to pay said debt. That the legislature meant that Cascade County should sell the bonds, and pay the debt with the money thus raised, is further manifested from the provision that said coupon bonds should bear interest at not more than six per cent per annum, thus leaving it in the discretion of the county of Cascade to determine the rate of interest the bonds should bear, limiting it only by the provision that the rate should not exceed six per cent, leaving the matter entirely within the discretion of the commissioners to fix the interest from a nominal rate of one half or one per cent up to and including six per cent per annum. If the commissioners should see fit, in the exercise of their discretion, to issue coupon bonds, bearing only a nominal rate of interest, which they might do · under the construction contended for by appellant, and turn said bonds over to Choteau County in kind, in payment of said debt, it would practically defer payment of said debt for fifteen years, as it would be impossible for Choteau County to sell said bonds at par as provided by law. Certainly if the legislature intended that Choteau County should receive the bonds in payment of this debt, it would not have left the matter to the mercy of the new county. Said act further provides that the bonds shall be payable in seven years, and due in fifteen years, and that they shall not be sold for less than par, and that they shall be issued as near as may be in conformity with the general law. Such a construction would present the spectacle of the legislature, solemnly declaring that in justice and good conscience, as the consideration for the territory, population, and property, that Cascade County might derive from Choteau County, and the relief of its tax-payers from the debts of the parent county, Cascade should be liable for and should pay to said county the sum of thirty thousand dollars, and then, that instead of paying this money it might pay it in its own coupon bonds, due in fifteen years, bearing only a nominal rate of interest, issued under a law which forbade Choteau County from selling said bonds at less than par. It seems to

us that such legislation would be to trifle with the rights of Choteau County, and practically declare that a debt of thirty thousand dollars now due shall not be paid for fifteen years, and that in the mean time it should bear only a nominal interest, unless said county of Cascade of its own grace should see fit to pay it at the end of seven years. The legislature did not mean to make such a contingency possible. If this construction of the bond clause of said act is the correct one, then the two propositions between which an election was to be made are so unequal that there is no room for choice. It would be to paraphrase the language of the act, which creates the liability, so that it shall read as follows, to wit: "To the county of Choteau the said county of Cascade shall be liable for and shall pay the sum of thirty thousand dollars, fifteen years after date."

But it is insisted by the appellant that if the act contem-.plated a cash payment from the proceeds of the bonds it would have said so, and would have provided for the transfer of the proceeds from one county treasurer to the other. In reply to this, we say that the act provides that said bonds shall be issued as near as may be in conformity with the general law, and when we turn to section 810 of the General Laws of the Territory, we find that "when the county commissioners of any county shall issue any bonds authorized by this act, it shall be their duty to sell the same, and give notice by advertising in some newspaper published in the county, or if there be no newspaper published in such county, then in any newspaper published in an adjoining county of this Territory, and also in one or more newspapers published in the city of New York, for a period of not less than thirty days prior to the time said bonds are to be sold. Such advertisement shall be for sealed proposals, which shall state the amount of such bonds for sale, and the party or parties offering the highest price therefor shall be entitled to receive the amount of such bonds which he or they may offer to buy; but no bonds shall be sold for any price less than the par value thereof." This is a provision for funding the floating indebtedness of the counties by authorizing them to issue bonds, sell them according to the foregoing provisions, cover the money back into the treasury, and pay it out upon presentation in the order of the outstanding warrants. The law then amply

provides for the manner in which the bonds shall be converted into cash, and the proceeds transferred from the treasury of the county issuing the bonds to the creditors, be they counties or individuals. It is further argued that these general laws touching, the management of the affairs of the counties already existing were applicable to Cascade County when organized, and that therefore there was no necessity for the legislature in the act organizing Cascade County to provide for the issuance of coupon bonds and their sale, for the purpose of paying its indebtedness. The same remark would apply with equal force to the provision in said act, that bonds may be issued to pay the current expenses for the first year. The right to do this was as perfect under existing laws before the passage of this act as it was afterwards. So, likewise, in regard to the first alternative, that the commissioners of the county of Cascade should "cause to be issued at their first regular session to each of said counties a warrant or warrants on the general fund of said county for the amounts to which they may be respectively entitled as aforesaid, which said warrants, if not paid on presentation to the treasurer of said county of Cascade, shall be by him indorsed, 'not paid for want of funds,' and shall thereafter bear interest as other warrants." The legislature having declared that Cascade County owed Choteau County the sum of thirty thousand dollars, without any further legislation, under existing laws, upon application of Choteau County to the commissioners of Cascade County, it would have been their duty to have issued warrants upon the general fund of the county for this indebtedness, as much so as for any item of the current expenses of said county. So that the fact that the legislature saw fit, in the passage of this act, to put in provisions which were already provided for by existing laws, is no argument in favor of the construction insisted upon by the appellant in relation to the purpose for which the coupon bonds of said county might be issued by said commissioners. In interpreting any clause of a section, it should be construed in connection with existing laws, and should be interpreted in the light of the objects and purposes that the legislature had in view in its enactment. Here the legislature is about to call into existence a new county, necessarily without revenue to pay debts and meet current expenses. Time must

elapse before taxes can be assessed and collected, and it was not to be supposed that there would be in the treasury of the new county at the first meeting of the commissioners, money enough with which to pay the sums of thirty thousand and six thousand dollars due, respectively, to Choteau and Meagher counties, and also its necessary current expenses.

In anticipation of this obvious condition of affairs, the legislature provided for the issuing of warrants upon the general fund, and upon their being presented and not paid for want of funds, which they must obviously have foreseen would be the case, that they should bear interest from the date of their indorsement by the treasurer, at the usual rate at which warrants draw interest, that is, seven per cent; thus putting it in the power of Cascade County to carry the debt until the commissioners could provide for its liquidation by taxation, or at their election place coupon bonds upon the market at such rate of interest as they might be able to sell them for at par, not exceeding six per cent, and thus raise the money with which to pay in cash the indebtedness created by said act. The act provides that these bonds shall not be payable for seven years, and shall not be due for fifteen years; thus giving the county ample time to get its affairs upon such footing as would enable it to provide for the payment of the principal without embarrassment to its tax-payers. If the commissioners should see fit to issue warrants upon the general fund, and pay seven per cent interest until the money could be raised to pay them, they might at any time thereafter, when in their judgment it was for the best interest of the county to do so, have issued bonds and sold them under the general law, to obtain money with which to liquidate said warrants. But instead of leaving the county to the general law, as it then stood, the legislature saw fit to insert these express provisions for its government. *Second.* If the commissioners elected to issue warrants on the general fund, they had the right to the whole of the time of such meeting in which to make their election. But the failure of the commissioners to act at this meeting ought not to defeat the rights of the respondent. Had it received warrants, could either have had the money and the use thereof, or the interest which would have accrued. But if the commissioners had elected the second alternative, that is, to issue

coupon bonds of Cascade County for the purpose of raising the money with which to discharge said debt, the inquiry rises as to whether interest should be paid upon said debt, and if so, from what time shall it be computed.   The act organizing the county is silent upon this point.   In other words, it does not say in so many words that interest shall be paid upon the debt until it is discharged by the proceeds of the bonds for the issuance of which it provides.   On the other hand, the act does provide that if the debt is paid by warrants drawn upon the general fund, they shall bear interest, and it provides the time from which the interest shall commence.   In the absence of any special provision in the act, we are left to interpret it in the light of the general law, and with reference to the scope and purpose of the law under consideration.   It is fair to assume that the legislature acted in the belief that the Cascade commissioners would, at their first regular meeting, make their election as to the method by which they would pay the debt, and that if they chose to pay it by issuing coupon bonds, they would proceed at once to advertise as required by section 810, *supra,* and raise the money with which to pay said debt.   It is fair to assume that the legislature believed that bidders could be found in the markets of the world for these bonds.   We observe that the commissioners could not have issued and sold the bonds at their first meeting, if they had elected to do so.   We observe, further, that they were not bound to issue warrants upon a special fund which they had not had reasonable time to provide.   Said warrants, when presented to the treasurer, and indorsed "not paid for want of funds," would draw interest under the general law. This would not be a fair construction of the act under consideration.   We think, then, that it was the expectation of the legislature that the county commissioners would provide for the payment of this debt in a reasonable time, if they saw fit to sell bonds for that purpose.   Certainly it was the duty of the appellant to have realized the money by the time of the second meeting, which, according to the allegations of the petition, was on the 6th of June, 1888.   At this meeting an agent of Choteau County demanded of the appellant, warrants upon the general fund, or the money in payment of said indebtedness, and its commissioners refused to do either.   They had failed to take

action in the matter at the March session, in violation of the plain, imperative mandate of the statute.    They again refused at the June session, and continued thus in open defiance of the law to the present time.    We think this constitutes a case of money "withheld by an unreasonable and vexatious delay," and that it should bear interest from the sixth day of June, 1888, at the rate of ten per cent per annum, under section 1237 of the Compiled Statutes.    But we are met at this point with the argument that "this board is composed of public officers, who give bonds for the faithful performance of their official duties, on which they are directly answerable for neglect or violation of duty. And in this instance, by virtue of the act in question, they are created a special tribunal for the performance of certain public governmental functions or duties imposed by positive law; and under such circumstances, nothing is better settled than that the county or other municipal corporation cannot be held liable for a violation or neglect of duty by its officers."    And we are referred to the following authorities in support of this position: Cooley on Torts, p. 621 ; *City of Richmond* v. *Long*, 17 Gratt. 378 ; 94 Am. Dec. 461 ; *County Commrs.* v. *Duckett*, 20 Md. 468 ; 83 Am. Dec. 566, last note; *Stewart* v. *New Orleans*, 9 La. An. 461 ; 61 Am. Dec. 218 ; *Lloyd* v. *Mayor of New York*, 1 Seld. 369 ; 55 Am. Dec. 347 ; 62 Am. Dec. 124, n.; *Chumasero* v. *Potts*, 2 Mont. 242 ; *People* v. *Tweed*, 13 Abb. Pr. N. S. 77, referred to in note, 62 Am. Dec. 124.    The doctrine of these cases is that when the law devolves upon certain *public officers* a duty to perform as *such*, the rule of *respondeat superior* does not apply to them.    This rule can only apply where the relation of master and servant, or principal and agent, exists.    In such cases the master or principal must answer for the conduct of the servant or agent within the scope of the service or agency imposed.    Judge Rives, of the Supreme Court of Virginia, in the case of the *City of Richmond* v. *Long's Adm'r*, 17 Gratt. 375 ; 94 Am. Dec. 461, in speaking of municipal corporations, lays down this doctrine in the following language, to wit: "The functions of such municipalities are obviously twofold: (1) Political, discretionary, and legislative, being such public franchises as are conferred upon them for the government of their inhabitants and the ordering of their public officers, and to be exercised solely for

the public good, rather than their special advantage; and (2) those ministerial specified duties which are assumed in consideration of the privileges conferred by their charter.   Within the sphere of the former, they are entitled to this exemption, inasmuch as the corporation is a part of the government, and to that extent its officers are public officers, and as such, entitled to the protection of this principle; but within the sphere of the latter, they drop the badges of their governmental offices, and stand forth as the delegates of a private corporation in the exercise of private franchises, and are amendable as such to the great fundamental doctrine of liability for the acts of their servants. Again, the Supreme Court of the State of New York, in the celebrated case of the *People* v. *Tweed,* 13 Abb. Pr. N. S. 77, lays down this doctrine as follows, to wit: "This special commission appointed by the legislature, whether or not they were a corporation, or a *quasi* corporation, it is not material to inquire. It is sufficient to say they were created by an act of the State public officers, and they were invested with certain specified powers as such, to be exercised for special and limited purposes; but it was nevertheless clearly an office of public trust, to be executed for confessedly public purposes.   They were not created the agents of the county of New York, or of the board of supervisors in their corporate capacity.   (*Lorillard* v. *Town of Monroe,* 11 N. Y. [1 Kern] 395; 62 Am. Dec. 120.)   The county could not be sued or made responsible for the manner in which they discharged or used the duties of their office, for their breach of duty, for misfeasance or non-feasance, or for frauds, collusions, conspiracy, or embezzlements of money."   We hold, then, that while a county is a corporation for many purposes, and as such, an independent legal entity endowed by law with a limited portion of the sovereignty of the State, and as such, charged with duties, political and discretionary in their character, to be exercised for the public good, and that the board of county commissioners is the organ through which its functions are mainly executed, still, when the law itself imposes a duty upon its commissioners as *such,* and they are not appointed thereto by the county, the county will not be responsible for their breach of duty, or for their non-feasance or misfeasance in relation to such duty.   The Organic Act of Cascade County

imposes upon its commissioners the duty of selecting which of two methods shall be adopted in the payment of its indebtedness, and declares what they shall do when they have determined which method they will adopt. They derive their power from the law alone; none of it comes from the county. They are in no legal sense the servants or agents of the county, so that the doctrine of *respondeat superior* can apply to them. It follows, therefore, that the tax-payers of the county of Cascade cannot be burdened with one dollar more indebtedness than the legislative act imposes. And when we turn to it we find that the principal sum is thirty thousand dollars, and interest on warrants, if they are issued at all, from the time they are presented to the treasurer, and by him indorsed "not paid for want of funds," at the rate of seven per cent; but if coupon bonds are issued and sold, and the debt paid from the proceeds thereof, then no interest at all shall be paid by the county. *Third.* The second ground of appeal presents the question of the correctness of an item of costs of $1,582.85. Of this item the court below allowed the sum of $1,059. From this the defendant appealed. No appeal on the part of the plaintiff. This was taxed as the fees of the county attorney, under section 847, page 820, Compiled Statutes. This section provides, among other things, that the county attorney shall receive "for collections made for the county or Territory, on all sums of five hundred dollars or less, ten per cent thereof; on all sums over five hundred dollars, ten per cent on the first five hundred dollars and five per cent on the excess over five hundred dollars. . . . . All fees in this section hereinbefore provided shall be taxed as costs."

The defendant contends that the above section applies to collections of money actually made and paid into the treasury, and not to the proceeding by writ of mandate to compel the performance of a duty, notwithstanding such duty is the payment of money into the treasury. At first we thought this position correct, but under fuller consideration we have reached a different conclusion, and follow the construction given by the Supreme Court of California to a similar statute, in the case of *Higby* v. *Calaveras County,* 18 Cal. 176. In this case the court says: "But it is argued that this case is not brought within the purview of the statute, for the reason that this proceeding was not an

action, but a mere mandate, not brought for the recovery of money, but to enforce a specific obligation, the direct effect of which was not the collection of money, but the enforcement of a ministerial duty, which resulted in securing the evidence of a debt rather than the payment of it. We think, however, that there is more ingenuity than soundness in this view. The statute makes no provision for this service, and we cannot suppose that the legislature meant that the compensation of the district attorney should be made dependent upon the nature or form of the action. The substantial thing intended was a proceeding whereby the claim might be realized, and whether this were by action of debt or *mandamus* was not important, if this end was secured. Nor is it important whether this result be obtained by a judgment for money, or for anything else which was equivalent or could be made equivalent to money. The assurance of the warrant by a judgment affirming the indebtedness of Amador County was, in effect, the collection of the money, or the securing of it to the county of Calaveras; and when that county used the warrant as money, it became liable to the attorney for his fees as if the money had been directly paid to it. This would be the true construction of an ordinary contract between counsel and client, and we see no reason for a different rule here."

The argument that the fee cannot be paid until the money is collected is not sound, because the statute provides that it shall be taxed as costs, and this should be done at the time the judgment is rendered.

Section 846, *supra,* provides "that in no case shall the fees allowed by this section . . . . exceed in amount the sum of twelve hundred dollars in any county, and the county attorney shall furnish to the county commissioners a statement of all fees received by him, which, together with the fees allowed by the county commissioners, shall not exceed the sum of twelve hundred dollars." This statute governs in this case. By its provisions the county attorney cannot receive a greater sum as a fee than twelve hundred dollars; and the commissions allowed by the statute are limited by this provision.

If the county attorney who was in office when the case was tried below has received the maximum of twelve hundred dollars in fees, then he can receive no more.

The case will be remanded upon this point, with directions to . the court below to ascertain by proof what amount of fees the county attorney of Choteau County has already received. This sum will be deducted from twelve hundred dollars, and the remainder will be taxed against the defendant and collected as costs.

*Judgment modified.*

DE WOLFE, J., and LIDDELL, J., concur.