Argued March 16, reversed and dismissed April 6, rehearing denied
June 8, 1920.

# TAGGART v. SCHOOL DISTRICT No. 1.

### (188 Pac. 908, 1119.)

**Constitutional Law—Validity of Statute not Determined Unless
Necessary to Decision.**

1. Whether the School Tenure of Office Act February 7, 1913
(Laws 1913, p. 69), as amended by Laws of 1917, page 196, is con-
trary to Article IV, Section 22 of the Constitution, requiring amend-
ments to set forth in full the act or section amended, will not be
determined in a proceeding where its determination is not necessary
to the decision.

**Statutes—All Legislation on Same Subject must be Given Effect.**

2. All legislation on the same subject must be taken in *pari materia*
and all given effect where possible.

**Schools and School Districts—Employment of Teacher must be in
Writing.**

3. Under Laws of 1913, page 301, Section 1, subdivision 7, au-
thorizing school directors to contract with teachers and requiring
them to file such contracts in the office of the district clerk, a con-
tract for the employment of a teacher must be in writing.

**Schools and School Districts—Teacher cannot Rely on Apparent Au-
thority of Superintendent to Employ.**

4. A school-teacher is presumed to know the law requiring con-
tracts of school directors employing teachers to be in writing, and
cannot rely on apparent authority of the superintendent of the dis-
trict to hire teachers orally.

**Schools and School Districts—Teacher not Entitled to Hold Under
Tenure of Office Act Unless Employed in Writing.**

5. A school-teacher cannot claim the benefit of the Tenure of
Office Act (Laws 1913, p. 69), as amended by Laws of 1917, page
196, applying to certain districts only and fixing the tenure of
teachers in the employ of school district, unless the contract was
in writing as required in all districts by Laws of 1913, pages 301,
304, Section 1, subdivisions 7, 17.

**Mandamus—Damages cannot be Allowed Without Allegation in
Alternative Writ.**

6. Under Section 620, L. O. L., giving pleadings in *mandamus*
same effect and the same construction as other pleadings, an appli-
cant for *mandamus* cannot recover damages where there was no
allegation in the alternative writ that she had been damaged.

ON PETITION FOR REHEARING.

**Schools and School Districts—"Permanent Teachers"—Rights of.**

7. In order to give a teacher the rights of a "permanent" teacher under Laws of 1917, page 196, the appointment under which she has been teaching must be, not only valid, but "regular."

**Schools and School Districts—One Appointed Substitute not "Regularly" Appointed nor a "Permanent Teacher."**

8. One appointed by superintendent of schools as a substitute only to take the place of a regular teacher temporarily, until the regular teacher should recover from her illness or until death should end her employment, was not "regularly" appointed, within the meaning of Laws of 1917, page 197, Sections 4, 5, relating to the rights of permanent teachers.

**Schools and School Districts—Substitute Teacher—Termination of Employment—Notice not Necessary.**

9. Laws of 1913, page 69, Chapter 37, Section 2 (if still in force), and Laws of 1917, page 197, Section 3, the former relating to classification of teachers and the latter to notice of termination of employment, have no application to substitute teachers temporarily employed.

**Schools and School Districts—Appointment of Teacher by Superintendent not "Regularly" Appointed.**

10. Laws of 1913, page 301, Section 1, subdivision 7, providing that board shall hire teachers and make contracts, is not inconsistent with Laws of 1917, page 196, and a teacher appointed by the superintendent of a district was not "regularly" appointed, within the meaning of Sections 4 and 5 of the latter act, relating to the listing and rights of permanent teachers; the word "regular," meaning in accordance with the prescribed authority, or, in the absence of prescribed authority, that it is according to the proper and appropriate method of procedure.

**Schools and School Districts—Teacher—Irregular Appointment—Ratification Did not Render Teacher "Regularly" Appointed.**

11. The fact that the school board, having authority under Laws of 1913, page 301, Section 1, subdivision 7, to make contracts with teachers, accepted the services of a teacher irregularly appointed by the superintendent of the school district, did not render her a "regularly" appointed teacher, within the meaning of Laws of 1917, page 197, Sections 4, 5, relating to the listing and rights of permanent teachers.

From Multnomah: ROBERT TUCKER, Judge.

In Banc.

This is a proceeding in *mandamus* against School District No. 1 of Multnomah County, its board of directors and acting superintendent, to compel the

restoration of the plaintiff to her position and employment as a teacher in the Lincoln High School of that district. From the alternative writ we glean that the plaintiff is a citizen of the United States and of this state, a resident of the district, and at all times mentioned, a teacher of more than twenty years' experience, holding a certificate qualifying her to teach in any of the high schools of the district for the period of five years next after September 7, 1915. It is stated in the writ:

"That for three and one-half annual terms next preceding the 27th day of January, 1919, said plaintiff was continuously employed by said district as a regularly appointed teacher in the science department of the Lincoln High School, one of the schools of said district; that she taught in said position during every session of said school during said period and performed all the duties thereof; and that; at the time of the wrongful dismissal hereinafter mentioned, she was upon the list of permanently employed teachers of said district."

After an allegation about the rate of compensation fixed by the board of directors, it is stated in substance that on January 27, 1919, on her reporting for duty as teacher, the defendants without cause, without notice and without any complaint having been made or filed against her, dismissed her summarily and prevented her from continuing in her position as such teacher. It is alleged and not denied that she has at all times been ready, able and willing to continue in the employment.

A demurrer to the writ by the superintendent was sustained and the proceeding was dismissed as to him. As no appeal has been taken by either party on that branch of the case, it will not require further notice. The demurrer of the district and its

board of directors was overruled and they answered, flatly denying the quoted allegation of the plaintiff's employment, admitting that she was the holder of a certificate as stated in the writ, and otherwise traversing most of the essential allegations of the writ. In substance, the affirmative matter of the answer is to the effect that, in pursuance of a rule promulgated by the board, the superintendent of schools of the district, without further action by the directors, substituted the plaintiff to teach in place of a regularly employed teacher who was incapacitated on account of illness resulting in her death, and that these are the services of the plaintiff named in the writ. The making of the rule and the appointment of the plaintiff by the superintendent to the position formerly occupied by the sick teacher, were admitted by the reply, but the other new matter of the answer was denied except as stated in the writ. The Circuit Court made findings of fact, which, except No. 3 thereof, are substantially in the language of the alternative writ; and as a conclusion of law found that the plaintiff was entitled to a judgment according to the command of the writ, and that in addition thereto she should recover from the defendant as damages the sum of $800, with interest at the rate of 6 per cent per annum upon installments of $160 thereof respectively from February 24, March 24, April 21, May 19, and June 16, 1919, until the date of the judgment. From the ensuing judgment the district and its directors have appealed.

REVERSED AND DISMISSED.

For appellants there was a brief over the names of *Mr. Gus C. Moser* and *Mr. Roy K. Terry*, with an oral argument by *Mr. Moser*.

For respondent there was a brief with oral arguments by *Mr. John C. Jenkins* and *Mr. E. T. Taggart.*

BURNETT, J.—This is a proceeding under the act of February 7, 1913 (page 69), passed "to provide for the employment and discharge of teachers, officers, and other employees in school districts now having or which at any time hereafter shall have a population of 20,000 or more persons," which legislation is commonly known in school circles as the "tenure of office act." Another statute on this same subject is embodied in Chapter 152 of the Laws of 1917, entitled

"An act to amend Chapter 37 of the General Laws of Oregon for 1913, and to provide for the employment and discharge of all officers, agents and employees, and for the employment, transfer, investigation, trial and discharge of all teachers, classifying of teachers and instructors, creating a nonsalaried commission for the investigation and trial of teachers and instructors in school districts now having, or which shall have a population of 20,000 or more persons."

1. It is contended by the defendants that the acts of 1913 and 1917 are unconstitutional, in that they do not set forth at full length the act revised or section amended. It is claimed that the first of these enactments is amendatory of Section 4052, L. O. L., subdivision 7, relating to the manner of making contracts with teachers, and the second is a revision of the legislation of 1913, in both of which instances the legislature has not complied with Article IV, Section 22, of the state Constitution relating to the manner of enacting amendments, in that the amendment is not set forth at full length. We do not find

it necessary to consider this branch of the case, and in deference to the co-ordinate branch of the state government, the legislative department, this court, as a part of the judicial department will decline to consider the constitutionality of legislation unless it is necessary to the decision of the case before us.

2. It is an axiomatic principle in the construction of laws that all legislation on the same subject must be taken in *pari materia* and all given effect where possible. This precept is enunciated in the proviso of Section 17 of the act of 1913, where it is said:

"All acts and parts of acts in conflict herewith are hereby repealed. Provided, however, that all general laws of this state relating to public schools shall be applicable to districts under this act except in so far as the same may be in conflict with the provisions hereof."

In Section 1 of this same act it is said:

"The board of directors of each school district in this state now having or which at any time hereafter shall have a population of 20,000 or more persons shall have the power and authority to appoint and remove, hire and discharge all teachers, officers, agents and employees as it may deem necessary, and to fix their compensation."

At the same session at which this law was enacted, the legislative assembly passed the act of February 25, 1913 (Chapter 172, Laws 1913), "to provide for the duties and powers of district school boards, including their acts in connection with recurring indebtedness of their districts and funding and refunding the same, and to repeal Sections 4052, 4053 and 4054 of Lord's Oregon Laws relating thereto." In subdivision 7 of Section 1 of that act, treating of the duties of the board of directors, it is said:

"The board at a general or special meeting called for that purpose, shall hire teachers, and shall make contracts with such teachers which shall specify the wages, number of months to be taught, and time employment is to begin, as agreed upon by the parties, and shall file such contracts in the office of the district clerk."

It is further said in subdivision 17 of the same section:

"Any duty imposed upon the board as a body must be performed at a regular or special meeting, and must be made a matter of record. The consent to any particular measure obtained of individual members when not in session is not an act of the board, and is not binding upon the district. If a contract is made without authority of the board, the individual making such contract shall be personally liable."

Section 2 of the Tenure of Office Act lays down this definition:

"The word 'teacher' or 'teachers' as used in this act shall include supervisors and principals and instructors who are in the employ of the school district or districts specified in this act."

This is amplified in the legislation of 1917 on the same subject, thus:

"The word 'teacher' or 'teachers,' as used in this act, shall include all supervisors and principals and instructors who are in the employ of the school district or districts specified in this act, and all teachers and instructors are classified, for the purposes of this act, into the following branches of service, to wit: First, supervisors; second, high school principals; third, grade school principals; fourth, assistant supervisors; fifth, heads of departments in high school[s]; sixth, high school instructors; seventh, grade school teachers; eighth, special teachers. All teachers and instructors shall be placed or graded

in one of the foregoing branches of service for all purposes mentioned in this act."

Teachers are further classified by the Tenure of Office Act according to the length of their service. During the first two years thereof, they are known as probationary teachers, after which they are denominated permanently employed teachers. Section 4 of the original act and Section 4 of the act of 1917 are substantially the same, and read that:

"Teachers who have been employed in the schools in any such district or districts as regularly appointed teachers for not less than two successive annual terms shall be placed by the board of directors upon the list of permanently employed teachers."

The third finding of fact to which allusion has been made, reads thus:

"For three and one-half annual terms next preceding the 27th day of January, 1919, said plaintiff was continuously employed by said district as a regularly appointed teacher in the science department of the Lincoln High School, one of the schools of said district; and she taught in said position during every session of said school during said period and performed all of the duties thereof; and, at the time of the wrongful dismissal hereinafter mentioned, she was, by virtue of law, upon the list of permanently employed teachers of said district. Plaintiff was appointed to her position by Superintendent Alderman in September, 1915, during the illness of the teacher in that department, and plaintiff so continued teaching in said department after the death of said teacher, and until plaintiff was discharged. She never signed a contract with said district."

3. Construing subdivision 7 of Section 1 of the act of February 25, 1913, in an opinion by Mr. Jus-

tice HARRIS in *Foreman* v. *School District No. 25,*
81 Or. 587 (159 Pac. 1155, 1168), it was decided that
when the school board hires a teacher a written con-
tract must be made and filed, specifying the wages,
number of months to be taught, and time employment
is to begin as agreed upon by the parties. This is
plainly a reasonable construction of the act, for un-
less the contract is in writing it cannot be filed in
the office of the district clerk, as the act expressly
requires. It is said also in *Barton* v. *School District
No. 2,* 77 Or. 30 (150 Pac. 251, Ann. Cas. 1917A,
252), Mr. Chief Justice McBRIDE, delivering judg-
ment:

"It is a principle settled by numerous decisions
that where a power is given to a corporation to do
an act, and the particular method by which that
power is to be exercised is pointed out by statute,
the mode is the measure of the power. Here the
power or duty to employ teachers is prescribed, and
the particular method by which that power shall be
executed is also pointed out, and not only is this
the case, but the statute adds the mandatory words:
'Any duty imposed upon the board as a body must
be performed at a regular or special meeting, and
must be made a matter of record.'"

The manifest purpose and spirit of the statute,
and the only reasonable construction that can be
given it, is that the relation of teacher cannot be
created except by a written contract embodying the
terms prescribed by the statute. The duty thus im-
posed upon the board is not delegable. The di-
rectors have been elected by the people to perform a
duty requiring their judgment. It is not a ministe-
rial function which may be performed by another.
The injunction of the statute to the effect that this
must be done at a meeting of the board and made a

matter of record, and that the consent of individual members when not in session is not an act of the board and is not binding upon the district, accentuates this principle.

4. The plaintiff had no right to rely upon the action of the superintendent as a basis of service in the capacity of teacher so as to become ultimately one of the permanently employed teachers. A knowledge of the law is imputed to her. There is no such thing as apparent scope of authority in one professing to act as agent for a public municipality of which the powers and their manner of exercise are so strictly and minutely defined by statute. The law prescribes the scope and extent of the authority of those acting for the district, and no one can conceal himself behind the camouflage of apparent authority. If one contracts with another professing to act as agent of the district, it is at the peril of the contracting party. It does not bind the district unless the regular procedure is followed. This is the express command of the statute. As said in *Murphy* v. *City of Albina,* 22 Or. 106, 114 (29 Pac. 353, 356, 29 Am. St. Rep. 57):

"A sufficient answer to the suggestion that the conclusion we have reached works a hardship upon plaintiff, who in good faith performed the extra work, supposing that the persons who directed it to be done were authorized to do so, is, that every person dealing with the agents of a municipal corporation must at his peril see that such agents are acting within the scope of their authority and line of their duty, and if he make an unauthorized contract he does so at his own risk. The courts cannot disregard the well-settled rules of law in order to avoid an apparent injustice in a particular case."

5. Viewed in the light of the statute, the third finding of fact is self-contradictory. In the first part

it declares that the plaintiff was continuously employed by said district as a regularly appointed teacher. In the latter part it says that she was appointed by the superintendent during the illness of the teacher in that department, and concludes by saying: "She never signed a contract with said district." If she was appointed by the superintendent either orally or in writing, she was not a "regularly appointed teacher," because that is not the formula prescribed by the statute. It is only a "regularly appointed teacher" who is entitled to the benefit of the Tenure of Office Act. But, whatever construction we may place upon this finding of fact, the statement that she did not sign a contract with the district, but was only appointed by the superintendent, works out the result that the finding of fact does not support the judgment. Called upon to prove the disputed allegation of the writ that she was continuously employed by the district as a regularly appointed teacher, she failed to produce the only evidence recognized by the statute, to wit, a written contract with the directors entered into at a meeting of the board. At her peril she depended upon her transactions with the superintendent, who really had no authority and if he had, could not and did not exercise it as the law requires.

6. There was no allegation in the writ about any damages suffered by the plaintiff on account of the conduct of the defendants. It is said in Section 620, L. O. L.:

"The pleadings in the proceedings by *mandamus* are those mentioned in Sections 618 and 619, and no others are allowed. They are to have the same effect and to be construed and may be amended in the same manner, as pleadings in an action."

Further, in the following section, it is said:

"If judgment be given for the plaintiff, he shall recover the damages which he shall have sustained by reason of the premises, to be ascertained in the same manner as in an action, together with costs and disbursements, and a peremptory *mandamus* shall be awarded without delay."

It is well nigh a platitude to say that without an allegation of damages no judgment therefor can be supported. The award of damages in this instance was a pure gratuity and cannot be sustained in any view of the case.

Except in 1870, there has not been a session of the legislative assembly which has not promulgated some statute relating to the public schools, and it would seem that at some time the manner of their administration would be settled. But however that may be, no law has abolished the principle that one desiring to enjoy the benefit of a legislative enactment must comply with its terms and conditions. The statutes have prescribed the door by which the teacher may enter upon the path which ultimately leads to the position of permanent employment. Paraphrasing the Scriptures, we may say that he that entereth not by this door, but climbeth up some other way, the same is not entitled to *mandamus* installing him as a permanently employed teacher.

The conclusion is that the judgment must be reversed and the writ of *mandamus* dismissed.

REVERSED AND DISMISSED.

McBRIDE, C. J., and JOHNS, J., were not present at the hearing of this case.

Rehearing denied June 8, 1920.

## PETITION FOR REHEARING.

(188 Pac. 1119.)

On petition for rehearing. REHEARING DENIED.

*Mr. John C. Jenkins* and *Mr. E. T. Taggart,* for the petition.

*Mr. Gus C. Moser* and *Mr. Roy K. Terry, contra.*

BENNETT, J.—The facts in this case are fully stated in the original opinion of Mr. Justice BURNETT. A petition for rehearing is presented, accompanied by a very earnest and able brief, in which it is strongly urged that, however irregular the plaintiff's appointment as a teacher may have been, it was sufficient, after her services were accepted, to make her employment valid and effectual.

7. This view, however, overlooks the real controlling element in the case, which is that the appointment of the plaintiff, under which she has been teaching, must be not only valid, but "regular," in order to bring her within the law and give her the rights of a *permanent* teacher.

Section 4 of the act in question (Laws 1917, p. 197), provides:

"Teachers who have been employed in the schools * * as *regularly appointed teachers* * * shall be placed * * upon the lists of permanently employed teachers."

And it is such teachers, and such only, whose continued employment is perpetuated by the succeeding Section 5. These words, "regularly appointed," mean something. They are a limitation upon the

class of teachers whose tenure comes under the protection of the statute. It is not every teacher who may be employed by the district, but only those who were "regularly" appointed who share in its favors in this regard.

8. The question therefore is: Was the plaintiff *regularly* appointed? We think she was not. In the first place, she was never appointed or even employed as a regular teacher at all. She was appointed by the superintendent as a substitute only, to take the place of a regular teacher temporarily, until the permanent teacher should recover from her illness or until death should end her employment.

Miss Heath, the regular teacher, seems to have never been discharged. She seems to have remained upon the permanent roll. If she had recovered at any time, she would no doubt have claimed her place. If she had recovered in a week, or a month, the plaintiff would hardly have claimed a permanent right to her place, and the fact that she remained sick a long time, and finally died, can make no difference in principle, or in the permanent rights of the plaintiff.

9. Section 2 of the act of 1913 (Chap. 37), (if it is still in force) and Section 3 of the act of 1917 (Chap. 152), have no application to substitute teachers temporarily employed. The former is a mere classification of teachers, with reference to the character of their work, and the latter has plain reference to teachers regularly employed. To construe this latter clause, as referring to substitute teachers, would lead to absurd results. If we gave it that construction, it would follow that a substitute teacher, employed to take the place of another teacher for a week or a day, could not be discharged,

when the regular teacher reported for duty, without two and one-half months' notice, and then only at the close of the school year. The result would be that the district would, towards the end of the year, have many more teachers than positions, and would be compelled to pay these extra teachers for a long term of doing nothing. It is obvious that the legislature never intended such a result.

Neither was the *manner* of plaintiff's employment "regular," within the meaning of the statute. When we speak of any act of any officer or incorporated body being "regular," we mean that it is in accordance with the prescribed authority, or in the absence of prescribed authority, that it is according to the usual and appropriate methods of proceeding. And this is in accordance with the dictionary definition of the word.

One of the definitions given in the International Dictionary is:

"Selected, conducted, made, etc., in conformity with established or prescribed usages, rules or discipline."

And this, we think, was clearly the sense in which the word "regularly" was used in the legislative act in question. In the matter of employing teachers, the regular manner of their employment is in this state prescribed by statute. Section 7 of Chapter 172 of the Laws of 1913, provides:

"The board * * shall hire teachers and shall make contracts with such teachers, which shall specify the wages, number of months to be taught * * as agreed upon by the parties."

This was a re-enactment of subdivision 7 of Section 4052 of the Code, which was enacted in 1905.

10. This law was not and is not in any way inconsistent with the provisions of the act of 1917, and is not repealed thereby, and clearly applies to all districts, whether the population is greater or less than 20,000. Under this provision the regular way to appoint a teacher was by a written contract, executed at a meeting of the board, which contract should provide for the length of the employment. Any other employment was at least irregular, if not wholly void, and would not of itself, place the teacher upon the permanent list.

11. The brief of this petitioner urges very strenuously that, even if the appointment of the plaintiff was irregular, yet that it was not entirely void, and that it could be and was ratified by the acceptance of plaintiff's services, and many authorities are cited to support the contention that after she had taught, and the district had accepted her services, she could recover for the same, upon the theory that the contract was ratified by the district. Even if we assume that this is the law, it would not help the plaintiff in this proceeding, for she would still not be a "regularly" appointed teacher. There are many irregular acts and proceedings which are still valid—or may be made valid—validity is one thing, regularity quite another. The legislature has chosen to make regularity, not validity, the test.

As was indicated by Mr. Justice BURNETT in the original opinion, plaintiff entered upon her employment by a special door, and not by the regular one. If she had demanded and obtained a contract in the regular way, when she entered upon this employment, it would no doubt have shown that she was employed as a substitute, and temporarily only, until the recovery of Miss Heath. No blame whatever

attaches to her for having taken employment as she did, but she ought not now to claim more than she would have had, had she obtained her employment in the regular way prescribed by the statute.

The petition for rehearing is denied.

REVERSED AND DISMISSED.  REHEARING DENIED.