STATE EX REL. SHEA, RESPONDENT, *v.* COCKING, MAYOR, ET AL., APPELLANTS.

(No. 5,149.)

(Submitted January 31, 1923.  Decided February 14, 1923.)

[213 Pac. 594.]

*Mandamus—Cities and Towns—Officers—Police Judge—Blindness not Disqualification—Judgment—Damages—Cost—Attorney's Fees.*

Cities and Towns—Police Judge—Office—Creation of Statute.
    1.  The office of police judge is the creation of the statute and not of the Constitution.
Same—Office—Qualifications.
    2.  Where the legislature in creating an elective office prescribes no limitations or qualifications, the right to hold it is an implied

---

2.  Constitutionality of statute making residence within the district a qualification of a public officer, see note in 32 L. R. A. (n. s.) 835.

attribute of citizenship and is presumed to be coextensive with that of voting at an election held for the purpose of choosing an incumbent for that office, those only who are competent to select the officer being deemed competent to hold it.

Same—Police Judge—Blindness not Disqualification.

3. *Held,* that blindness does not disqualify one from holding the office of police judge.

Mandamus—Judgment—Damages—Attorney's Fees.

4. The damages which the applicant for a writ of *mandamus* is entitled to recover in case judgment is given in his favor, *held* to include the expense to which he was put in paying for the services of an attorney to bring the proceeding.

Same—Officers—Refusal to Perform Ministerial Duty—Damages—Costs.

5. A public officer who is positively required by law to perform a ministerial act and who neglects or refuses to perform it, renders himself liable in costs as well as damages, under section 9858, Revised Codes of 1921; and the award of costs in such a case is not discretionary.

Same—Damages—Liability of City Officers—Nonliability of City.

6. Where city officers (the mayor and city clerk) wrongfully refused to issue a warrant in payment of the salary of the police judge on the ground that he was disqualified from holding the office by reason of blindness, they were, but the city was not, liable for damages to relator in a proceeding in *mandamus* in which he had judgment.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

MANDAMUS by the State of Montana on the relation of Daniel F. Shea against James G. Cocking, as mayor of the City of Butte, and others. From a judgment for relator, defendants appeal. Modified and affirmed.

*Mr. J. O. Davies* and *Mr. M. J. Cavanaugh,* for Appellants, submitted a brief; *Mr. Cavanaugh* argued the cause orally.

Where the law holds that no person except an elector shall be eligible to office, this does not mean that the converse is true, that any elector whether qualified or not is entitled to hold office. Such reasoning would be very fallacious. This provision of the law simply limits the number from whom an officer may be chosen. The one chosen must be qualified to discharge the duties of the office. (*State* v. *Covington,* 29 Ohio St. 102.) Where the Constitution provided that the people should elect a prosecuting attorney without specifying any other qualification, it was held that as a knowledge of the law was a natural prerequisite to performing the duty of the

office, one who was not a licensed attorney was not eligible. (*People* v. *May*, 3 Mich. 598; Throop on Pub. Officers, sec. 71.)

Where the law or the Constitution provides that an elector may hold office it means a normal elector. Words must be taken in their natural and obvious sense, and not in a sense unusually restricted or enlarged. (*Martin* v. *Hunter*, 1 Wheat. (U. S.), 304, 4 L. Ed. 102; *Clark* v. *Utica*, 18 Barb. (N. Y.), 45.)

To sustain the contention of relator to mean that any person who was deaf, dumb and blind who could be eligible to vote would be eligible to be elected to or hold the office of police judge, would lead to absurd conditions. This cannot be. (Cooley on Constitutional Limitations p. 109; *McMullin* v. *Hodge*, 5 Tex. 34; *Walker* v. *Cincinnatti*, 2 Ohio St. 14, 8 Am. Rep. 24.) And without any constitutional or statutory prohibition one is ineligible to office, the duties of which he has no power to fulfill. (*People* v. *Thomas*, 33 Barb. (N. Y.), 287; *State* v. *Taylor*, 12 Ohio St. 130; *State* v. *Hoyt*, 2 Or. 246.)

There are certain offices which can be properly filled only by persons possessing peculiar fitness or professional attainments, and it is common in the law creating the office to require the incumbent should possess such qualifications, and though no written law requires it, such necessity may be deduced from the evident necessity of the case. (Dillon on Municipal Corporations, sec. 372; *People* v. *May*, 3 Mich. 598; *Opinion of Justices*, 145 Mass. 586, 13 N. E. 15; *People* v. *Adams*, 6 N. Y. Supp. 128.)

Attorneys' fees in the action in which they are claimed are never allowed as damages. (*McGaw* v. *Acker, Merrall & Condit Co.*, 111 Md. 153, 134 Am. St. Rep. 592, 73 Atl. 731; *Town of Climax* v. *Burnside*, 150 Ga. 556, 104 S. E. 435.) "Counsel fees are expenses incurred by the party for his own satisfaction. In the absense of any allegation or proof of an agreement to pay counsel fees, such fees cannot, unless specifically provided for by statute, be awarded as costs or otherwise." (*Reggio* v. *Braggiotti*, 7 Cush. (Mass.), 166; *Dame* v. *Cochiti Reduction Co.* (N. M.), 79 Pac. 296.)

Where there is no bad faith, there must be something more than being put to the expense of a suit, to authorize plaintiff to claim attorneys' fees as part of damage. (*Pferdmenges* v. *Butler,* 117 Ga. 400, 43 S. E. 695.)

A simple suit for his compensation against the city would have served all the purposes of relator, and in such a case he certainly could not have recovered attorneys' fees as costs or damages, why then because he chose the form of *mandamus?* Attorneys' fees cannot be charged as costs in the absence of statutory authority. (*Evans* v. *Central Life Ins. Co.,* 87 Kan. 641, 125 Pac. 86; *Howell* v. *Scroggins,* 48 Cal. 355; *Farmers & M. Im. Co.* v. *Dobney,* 189 U. S. 300, 47 L. Ed. 824, 23 Sup. Ct. Rep. 565; *Louisville Safety Vault & T. Co.* v. *Louisville N. R. Co.* (Ky.), 14 L. R. A. 586, note.)

The rule is that when the law devolves upon certain public officers a duty to perform as such, the doctrine of *respondeat superior* does not apply, so that if the relator suffered any damage by the refusal of the respondents to do their duty, the city of Butte could not be held liable in damages therefor. (*City of Richmond* v. *Longs Adams,* 17 Grattan (Va.) 375, 94 Am. Dec. 461; Cooley on Torts, p. 621; *County Commrs.* v. *Ducket,* 20 Md. 468, 83 Am. Dec. 557; *Lloyd* v. *Mayor of New York,* 5 N. Y. 369, 55 Am. Dec. 347; *Territory* v. *Board of Commrs.,* 8 Mont. 396, 20 Pac. 809.)

*Mr. F. E. Blodgett* and *Mr. N. A. Rotering,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is a proceeding brought by relator to compel the city of Butte and its mayor, treasurer, and clerk to issue to him two warrants in payment of his salary as police judge. He was elected and qualified as police judge of the city of Butte in 1921, and had been drawing his salary without question prior to the time when these officers refused to pay it further.

To the petition praying for a writ of mandate, the respond-

ents answered, setting forth as a defense that the relator was not, when he was elected, and never has been, eligible to hold the office because at all times he has been blind. Upon the hearing the court gave judgment for relator, commanding respondents to issue the warrants, and awarding him the sum of $250—this for attorneys' fees, and costs. Respondents have appealed from the judgment.

These questions are presented: (1) Whether a blind man is eligible to hold the office of police judge, and, if he is, (2) whether an attorney's fee should be allowed as damages, and (3) whether these damages and costs should be assessed against the city as well as against its officers.

1. In this state the qualifications for holding office are prescribed either by constitutional provisions or legislative enactments. And this is so generally in the United States. (Throop on Public Officers, sec. 72.)

Section 11 of Article IX of Montana's Constitution provides: "Any person qualified to vote at general elections and for state officers in this state, shall be eligible to any office therein except as otherwise provided in this Constitution, and subject to such additional qualifications as may be prescribed by the Legislative Assembly for city offices and offices hereafter created."

The statutory qualifications for one holding a municipal office [1] are prescribed by section 5007 of the Revised Codes of 1921, which reads as follows: "No person is eligible to any municipal office, elective or appointive, who is not a citizen of the United States, and who has not resided in the town or city for at least two years immediately preceding his election or appointment and is not a qualified elector thereof." And section 5010 provides: "All qualified electors of the state who have resided in the city or town for six months and in the ward for thirty days next preceding the election are entitled to vote at any municipal election." At the time of his election as police judge, relator was a qualified elector under these sections. The office of police judge is a creation of the

statute and not of the Constitution. (*State ex rel. Working* v. *Mayor*, 43 Mont. 61, 114 Pac. 777.)

The legislature has not prescribed any qualifications for the [2] incumbent of the office of police judge in addition to the statutes above quoted. This policy is consistent with the general rule. ''Where no limitations are prescribed, the right to hold a public office under our political system is an implied attribute of citizenship and is presumed to be coextensive with that of voting at an election held for the purpose of choosing an incumbent for that office; those, and those only, who are competent to select the officer being deemed competent also to hold the office.'' (Mechem on Public Office and Officers, sec. 67.)

Under the common law it was held that unfitness, if gross [3] and palpable, is a disqualification for holding an office. Throop says: ''It is needless to say that the practical application of the doctrine is generally very difficult and, as far as our examination has extended, there is but one case in the United States where it has been applied. That was in New York, where a person ignorant of any foreign language had been appointed interpreter, and it was held that he was incompetent to hold the office.'' (Throop on Public Officers, sec. 71.)

We have not been cited to an instance where a blind man has been declared ineligible to hold an office. No doubt it would be desirable to have as police judge a person perfect physically and mentally, but no such person is to be found in the body of the electorate. It would be desirable, also, to have as police judge a person well educated, learned in the law, a keen student of human nature, possessed of and alert in all his natural faculties. This court, while passing upon the weight of evidence in a lifeless record, has frequently spoken of the advantage possessed by the trial judge who has observed the demeanor of the witness on the stand. Often in the trial court have we observed a witness attempt by words to conceal the truth which the expression of his eyes or the lines of his face disclosed. The blind judge is deprived of

this advantage; in this respect certainly he is handicapped. But it is suggested that nature somewhat compensates for the loss of the faculty of sight by amplifying his other faculties, and that a blind man, while not able to see the person who speaks, may learn more from what he hears than another who is possessed of all his faculties but fails to use them. Some men have much keener perceptions than others and are truer in the deductions they draw; some possessing all their faculties have little power of observation. So, after all, the difference is one of degree.

It is contended that as the blind judge may not view the appearance of the complaining witness, which is often so material in that court—and sometimes the defendant is a ''sight'' for those who can see—the judge's disqualification is apparent. This disqualification is further emphasized, say counsel for appellants, by the fact that the police judge in this case personally cannot keep the docket which the law requires, but must intrust that duty to his clerk, and when the judge is called upon to certify to copies of that docket, necessarily he must certify to the verity of something of which he knows nothing except by hearsay. The judge, however, may cause the docket to be kept by his clerk, having what is written therein read to him by the clerk, and may certify to his docket from what is read to him by another. True, there is room for imposition here, but no more so than if the judge were making his will, and testamentary capacity is not affected by the fact that the testator is blind. See *Welch* v. *Kirby,* 225 Fed. 451, 166 C. C. A. 527, 9 A. L. R. 1409, and note on page 1416, in which appears a reference to the fact that the supreme court of Louisiana, in *State* v. *Martin,* 2 La. Ann. 667, sustained the will of Francois Xavier Martin, who had served upon the supreme court of Louisiana for thirty-one years, during the last eight years of which time he was totally blind.

It may be observed that, as to keeping and certifying his docket, a blind man is in no worse situation than one who can neither read nor write. And let it be noted, too, that

176    State ex rel. Shea *v.* Cocking et al.    [Dec. T. '22

[66 Mont. 169.]

under the law at present an elector possessed of all his faculties, but unable to read or write, and ignorant to a gross extent, is nevertheless eligible to hold any office in the gift of the people unless special qualifications for that office are prescribed by the Constitution or the statutes. In this connection it is interesting to recall the fact that a juror is required to be "in possession of his natural faculties, and of ordinary intelligence and not decrepit," and "possessed of sufficient knowledge of the English language." (Sec. 8890, Rev. Codes 1921.)

Notwithstanding the disadvantages under which a blind man must labor in the position of police judge, it cannot be said that this misfortune wholly disqualifies him from holding the office. The people of a municipality have the right to select as their police judge anyone who comes within the qualifications prescribed by statute. It is their sovereign right to select their own officers. If this rule permits too much latitude, then the question of eligibility cannot be corrected by the courts but must be by the legislature, in whom the power is reposed. (*People* v. *May,* 3 Mich. 598.)

2. Section 9858, Revised Codes of 1921, provides: "If judgment be given for the applicant, he may recover the damages which he has sustained, as found by the jury, or as may be determined by the court or referees, upon a reference to be ordered, together with costs; and for such damages and costs an execution may issue; and a peremptory mandate must also be awarded without delay." Passing upon this statute, this court, speaking through Mr. Justice Sanner, held that the damages provided for in the section are "such damages as are incidental to the proceedings themselves, and not those arising out of the prior preclusion or deprivation which the writ itself was invoked in part to redress." (*Bailey* v. *Edwards,* 47 Mont. 363, 133 Pac. 1095.)

The question as to whether this word "damages" includes the expense which relator has been put to in paying for the services of a lawyer to bring the proceeding, must be answered in the affirmative. Under the construction given the section in *Bailey* v. *Edwards,* with which we are satisfied, this must be

so. This is the decision of the supreme court of Kansas construing a statute substantially identical with ours. (*Mc-Clure* v. *Scates,* 64 Kan. 282, 67 Pac. 856; *Larabee Flour Mills Co.* v. *Missouri Pacific R. Co.,* 85 Kan. 214, 116 Pac. 901; *Columbia Knickerbocker Trust Co.* v. *Finney,* 93 Kan. 302, 144 Pac. 222.) This statute is constitutional. (*Missouri Pacific R. Co.* v. *Larabee,* 234 U. S. 459, 58 L. Ed. 1398, 34 Sup. Ct. Rep. 979.) There is reason underlying this interpretation. In the instant case the relator was police judge of the city of Butte and entitled to the salary provided by law. He was deprived of this salary by the wrongful acts of the defendants; by this we are not implying that they did not act in good faith. The relator was compelled to employ and pay an attorney. The court found $250 to be the amount of his damage. Under the statute he is entitled to reimbursement in that sum; his attorney's fee is not in the nature of costs; the statute provides for damages and costs.

3. As to the subject of costs: When a public officer is positively required by law to perform a ministerial act [5, 6] and he neglects or refuses to do so, he renders himself liable in costs (26 Cyc. 513; 18 R. C. L., Mandamus, 323), and under our statute in a *mandamus* proceeding for damages also, as held above. Counsel for appellants seem to concede this rule as to costs, but say if relator has suffered damage by the refusal of the city officers to do their duty, the city should not be held liable therefor. In this position they are correct. Here the rule of *respondeat superior* does not apply. In this instance they are "not the agents or servants of the municipal corporation, but are public officers, the agents or servants of the public at large," and consequently the city is not liable for their acts or omissions complained of in this proceeding. (*Maximilian* v. *Mayor,* 62 N. Y. 160, 20 Am. Rep. 468; *Lorillard* v. *Town of Monroe,* 11 N. Y. 392, 62 Am. Dec. 120; *Territory* v. *Board of Commissioners,* 8 Mont. 396, 7 L. R. A. 105, 20 Pac. 809; *State ex rel. Wunderlich* v. *Kalkofen,* 134 Wis. 74, 113 N. W. 1091.)

Prior to 1913, California had a statute identical in terms with our 9858. In that year there was added to their statute a provision: "That in all cases where the respondent is a state, county or municipal officer, all damages and costs, or either, which may be recovered or awarded, shall be recovered and awarded against the state, county or municipal corporation represented by such officer and not against such officer so appearing in said proceeding, and the same shall be a proper claim against the state, or county, or municipal corporation for which such officer shall have appeared, and shall be paid as other claims against the state, county or municipality are paid; but in all such cases, the court shall first determine that the officer appeared and made defense in such proceeding in good faith." (Kerr's Cyclopedic Codes of California 1920, sec. 1095.)

Our section 9810 of the Revised Codes of 1921 reads as follows: "The state or a county, or any subdivision thereof, or any officer when prosecuting or defending an action on behalf of the state or county, or subdivision thereof, is not required to pay or deposit any fee or amount to or with any officer during the prosecution or defense of an action. No officer so prosecuting or defending shall be taxed with costs or damages, but such costs or damages, if any, shall be taxed to the state or county, as the case may be." It will be noted that section 9810 does not in terms include municipal officers. It is suggested that our legislature might well amend section 9810 to comprehend every officer who may have occasion to prosecute or defend an action or special proceeding in behalf of the public he represents; in other words, it might well supplement section 9810 with the provisions of the California statute which are not now embraced within the terms of section 9810.

Whether section 9810 can be construed to include municipal officers need not be decided in this action, for the record is barren of any showing that the officers were acting in behalf of the city in refusing to issue the warrants. So far as the

record discloses, they were acting upon their own initiative in doing what they did.

*Mandamus* being a special proceeding under the provisions of section 9898, costs are allowed of course to the plaintiff upon a judgment in his favor. Sections 9787 and 9858 when construed together, determine that the award of costs in a *mandamus* proceeding is not discretionary. (*Power* v. *May,* 123 Cal. 147, 55 Pac. 796.)

Moreover, relator's amended petition does not state a cause of action against the city or the treasurer; such allegations as are made indicate that the city as such was not remiss in its duty; the fault was with the mayor and city clerk who refused to draw the warrants. The treasurer was not at fault because no warrants were presented to him for payment; there were no warrants for him to pay. It follows from what has been said that the judgment should be affirmed, with the modification that it shall run only against the mayor and city clerk and not against the city of Butte or its treasurer.

The cause is remanded to the district court of Silver Bow county, with directions to modify the judgment accordingly, and, when so modified, it shall stand affirmed.

*Modified and affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.

Rehearing denied March 9, 1923.