Argued and submitted May 5, affirmed September 22, 1981

# STATE ex rel THE KASHMIR CORPORATION,
*Petitioner,*

*v.*

## SCHMIDT et al,
## CF12Respondents.

### (CA 17380, SC 27510)

633 P2d 791

M. Chapin Milbank, of Schlegel, Milbank, Wheeler, Jarman & Hilgemann, Salem, argued the cause and filed briefs for petitioner.

William G. Blair, Assistant City Attorney, Salem, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

LENT, J.

## LENT, J.

In this proceeding in mandamus, we are concerned with interpretation of ORS 34.210, which provides:

> "If judgment is given for the plaintiff, he shall recover damages which he has sustained by reason of the premises, to be ascertained in the same manner as in an action, together with costs and disbursements, and a peremptory mandamus shall be awarded without delay."

Plaintiff takes the position that the statute creates a cause of action upon which a plaintiff in mandamus may recover whatever damages flow from a defendant's action which plaintiff seeks to correct in mandamus. Defendant contends that the statute has procedural effect only and merely allows a plaintiff in mandamus to include any separate cause of action for damages a plaintiff might have arising from the acts of a defendant asserted to give rise to the plaintiff's right to a peremptory writ. We conclude that neither party is correct, and that the answer as to the meaning of the statute is given by history of mandamus.

### FACTS

Plaintiff is a corporation engaged in the development of subdivision housing projects. The defendant City of Salem is a municipal corporation, and the individual defendants are, respectively, the Street Inspector and the Construction Manager for the defendant City.

In the fall of 1978, plaintiff started construction of a subdivision, operating under plans previously approved by the defendant City of Salem. On April 13, 1979, the individual defendants, acting in their official capacities as agents of and on behalf of the City of Salem, issued a stop work order. Plaintiff halted construction. Plaintiff then petitioned the circuit court of Marion County for an alternative writ of mandamus, demanding that the City issue a resume work order and permit plaintiff to proceed with construction. In its petition, plaintiff also asked for judgment for damages pursuant to ORS 34.210. The alternative writ issued, commanding the defendants to issue the resume work order or show cause for their omission to do so. The alternative writ did not mention the question of

damages.[1] On return to the writ, the circuit court ruled that the City's prior approval of plaintiff's plans gave plaintiff a "vested right" to proceed with construction under those plans. The court issued a peremptory writ of mandamus, which commanded the defendants to permit plaintiff to resume work. The peremptory writ made no mention of damages.[2] The circuit court continued the trial on this issue until a later date.

By a supplemental pleading of August 10, 1979, plaintiff alleged that its work was delayed for 39 days by issuance of the stop order and set forth its specific claim for damages resulting from the delay and alleged:

> "That the actions of the named defendants were arbitrary, capricious and without authority of law, by statute, ordinance or otherwise, and were intended to stop the plaintiff's project and to cause the plaintiff the damages as indicated above and that said actions did intentionally interfere with the economic interests of the plaintiff and did intentionally inter [sic] with the economic relations and contracts of plaintiff * * *."

Defendants demurred to this supplemental pleading, contending that their actions were based upon the exercise of judgment and discretion, and that defendants were therefore immune under ORS 30.265(3)(c) of the Oregon Tort Claims Act. The circuit court overruled the demurrer.

Defendants, by affirmative answer, asserted immunity under ORS 30.265(3)(c), and the question of damages came on for trial on December 17, 1980. The parties waived trial by jury.[3] The circuit court found that defendants were protected by governmental immunity under

---

[1] We note in passing that under our procedure, the alternative writ is the primary pleading, serving the function of a complaint. The petition is not a pleading, is not part of the proceedings, and becomes legally defunct when the alternative writ issues. *See Taggart v. School District No. 1,* 96 Or 422, 432, 188 P 908, 912, 188 P 1119 (1920); *see also Johnson v. Craddock,* 228 Or 308, 322, 365 P2d 89, 96 (1961); *Crawford v. School District No. 1,* 68 Or 388, 393, 137 P 217, 219 (1913).

[2] *See* fn. 1, *supra.* The defendants did not appeal the decision of the circuit court granting the peremptory writ of mandamus. For the purposes of this decision, we assume the validity of the issuance of the writ.

[3] We mention this fact because it forecloses the question of the possible conflict between procedures in an action for mandamus and Or Const, Art I, § 17.

ORS 30.265(3)(c) and that they had acted in good faith. On March 27, 1980, the court entered a judgment, affirming the peremptory writ of mandamus but denying plaintiff damages and granting defendants judgment against plaintiff for costs.

Plaintiff appealed to the Court of Appeals, arguing that the circuit court's ruling misapplied ORS 34.210. The Court of Appeals affirmed, *State ex rel Kashmir Corp. v. Schmidt,* 49 Or App 271, 619 P2d 918 (1980). Finding that plaintiff's case rested on a claim of intentional interference with an economic relationship, the court reasoned that to make out such a claim, plaintiff had to show that the defendants acted with an improper motive or used improper means. The court held that, upon the findings of fact of the circuit court, plaintiff had failed to establish its case. We allowed plaintiff's petition for review. ORS 2.520; 290 Or 652 (1981).

Before this court, plaintiff bases its case solely on ORS 34.210. At oral argument, plaintiff conceded that the claim for damages rests solely on that statute and declared the reference in its Supplemental Pleading to intentional interference was surplusage to its claim for damages.

Plaintiff argues that ORS 34.210 creates a substantive basis for the recovery of damages, independent of any other cause of action plaintiff may have. It contends that by deciding that a peremptory writ of mandamus should issue, the trial court had concluded that plaintiff had established its right to recover damages for the delay. Plaintiff's position, accordingly, is that the trial court then faced only the question of determining the amount of damages, since the issuance of the writ overruled all defenses to liability, and the only question remaining was the specific proof and computation of damages. Plaintiff's reading of ORS 34.210 stresses the mandatory language "if judgment is given for plaintiff, he shall recover damages." Plaintiff contends the language "to be ascertained in the same manner as in an action" means only that the amount of damages is calculated as in an action.

Defendants, by contrast, argue that the statutory provision is merely procedural, allowing the trial court to combine the trial on the mandamus question with the trial

on the question of damages rather than forcing plaintiff to initiate a separate action for damages. The two causes—for the writ and for damages—stand independent of one another. Defendants read the language, "to be ascertained in the same manner as in an action," as requiring plaintiff to make out a complete cause of action, subject to all relevant defenses.

Neither party's position is consistent with the historical origins and development of the mandamus statute, with our interpretation of the statutory language, and with the case authority on point.

Historically, mandamus was not concerned with the recovery of damages. It was a command of the central courts, in the name of the sovereign, requiring a local official to do his duty. We note that, as a holdover of these historical origins, cases of mandamus are captioned in the name of the state on the relation of the plaintiff, rather than in the name of the plaintiff. While our practice does not retain all aspects of the original mandamus action, neither do we completely disregard its limitations.

The writ of mandamus was the creation of judicial action in England.[4] The English gradually found that the procedure as initially devised by the courts was unworkable. As many authorities explain, the return to the alternative writ was taken as conclusive. The plaintiff was not allowed to contest any facts pleaded therein. As Edith Henderson explains in Foundations of English Administrative Law (1963), at 64-65:

"[T]he person on whose behalf the writ issued (* * * the relator) was not a party to the proceedings on the return. Those proceedings would concern only the summoning court and the person or persons summoned, although the relator was the real party in interest. From this it follows that the return must be certain, leaving nothing to 'intendment' or inference, for the relator 'has no day in court' and cannot elaborate or substantiate it. It follows also that the court is bound to judge by the return, for it has nothing but the writ and the return before it; and therefore if the return is false, the relator has no remedy but an action on the case."

---

[4] See generally, E. Henderson, The Foundations of English Administrative Law (1963).

Until the procedure was changed by statute, the only pleadings before a court considering a return to an alternative writ of mandamus were the writ and the return.[5] "[T]he return upon the first, or alternative, writ of *mandamus* was not traversable. It was treated as a record, importing absolute verity. * * * [J]udgment was rendered upon the facts as stated in the return, whether truly or otherwise." *State ex rel. Alexander v. Ryan,* 2 Mo App 303, 307 (1876). *See also* S. Merrill, Law of Mandamus, § 268 at 332 (1892) (hereinafter Merrill); *State ex rel. Bautz v. Harper,* 166 Wis 303, 311-12, 165 NW 281, 285 (1917).

The only way that the relator could challenge the factual assertions contained in the return was to bring an independent action on the case to recover damages. He could not commence this action until the court rendered judgment against him on the basis of the false return. Until then, he had suffered no damages cognizable to the English courts. *See Indiana Alcoholic Beverage Commission v. State ex rel. Harmon,* 269 Ind 48, 379 NE2d 140 (1978); *State ex rel. Bautz v. Harper, supra* ; 55 CJS Mandamus § 342 (1948); Merrill, *supra.*

> "At common law, trespass on the case was the proper remedy against an officer for making a false return. Koffler, Reppy, *Common Law Pleading* § 93 (1969). Case was a tort involving a legal duty, a breach thereof by a wrongful act, and damages proximately caused by the wrongful act. * * * If the moving party lost as a result of a return found sufficient and then discovered that the return was false in point of fact, rather than in point of law, such party could then institute a separate action at law and, upon sufficient proof of the false factual basis for the return, recover damages. In such separate cases, it was conceived that there was a duty to make a truthful return, and that such duty was breached by the making of a false return."

*Indiana Alcoholic Beverage Commission, supra,* 379 NE2d at 144. *See also State ex rel. Bautz v. Harper, supra; State ex rel. Alexander v. Ryan, supra.*

Under this common law procedure, mandamus was an independent proceeding, having no direct connection with actions for damages. The Statute of Anne (9 Anne ch

---

[5] *See note 1, supra.*

20 [1710]), portions of which we set forth in the margin,[6] was a fundamental change to this. By this statute, Parliament modified the proceedings in mandamus, to allow the relator to respond to a return,

---

[6] "An Act of Parliament, 1710. St. 9 Anne c. 20 [12 Statutes at Large (Pickering ed. 1764) pp 189-192]

"Chap. XX. An act for rendring [sic] the proceedings upon writs of *Mandamus,* and informations in the nature of a *Quo Warranto,* more speedy and effectual; and for the more easy trying and determining the rights of offices and franchises in corporations and boroughs.

"* * * * *

"* * * [B]e it enacted by the Queen's most excellent majesty, by and with the advice and consent of the lords spiritual and temporal, and commons, in this present parliament assembled, and by the authority of the same, That from and after the first day of *Trinity* term, in the year of our lord one thousand seven hundred and eleven, where any writ of *Mandamus* shall issue out of the court of *Queen's Bench,* the courts of sessions and counties palatine, or out of any the courts of grand sessions in *Wales,* in any of the cases aforesaid, such person or persons, who by the laws of this realm are required to make a return to such writ of *Mandamus,* shall make his or their return to the first writ of *Mandamus.*

"II. And be it further enacted by the authority aforesaid, That from and after the said first day of *Trinity* term, as often as in any of the cases aforesaid, any writ of *Mandamus* shall issue out of any of the said courts, and a return shall be made thereunto, it shall and may be lawful to and for the person or persons suing or prosecuting such writ of *Mandamus,* to plead to, or traverse all or any the material facts contained within the said return; to which the person or persons making such return shall reply, take issue, or demur; and such further proceedings, and in such manner shall be had therein, for the determination thereof, as might have been had if the person or persons suing such writ had brought his or their action on the case for a false return; and if any issue shall be joined on such proceedings, the person or persons suing such writ shall and may try the same in such place as an issue joined in such action on the case should or might have been tried; and in case a verdict shall be found for the person or persons suing such writ, or judgment given for him or them upon a demurrer, or by *Nil dicit,* or for want of a replication or other pleading, he or they shall recover his or their damages and costs in such manner as he or they might have done in such action on the case as aforesaid; such costs and damages to be levied by *Capias ad Satisfaciendum, Fieri Facias,* or *Elgit;* and a peremptory writ of *Mandamus* shall be granted without delay, for him or them for whom judgment shall be given, as might have been, if such return had been adjudged insufficient; and in case judgment shall be given for the person or persons making such return to such writ, he or they shall recover his or their costs of suit, to be levied in manner aforesaid.

"III. Provided always, That if any damages shall be recovered by virtue of this act against any such person or persons making such return to such writ as aforesaid, he or they shall not be liable to be sued in any other action or suit, for the making such return; any law, usage or custom to the contrary thereof in any wise notwithstanding.

"* * * * *

.

"to plead to, or traverse all or any of the material facts
contained within the said return; to which the person or
persons making such return shall reply, take issue, or demur;
and such further proceedings, and in such manner shall be
therein, for the determination thereof, as much have been had
if the person or persons suing such writ had brought
his or their action on the case for a false return; * * *. "

9 Anne ch 20, § 2. The Statute of Anne was a procedural act.
The various references throughout to an action on the case for
a false return show that the only effect of the statute was to
allow the relator to combine his action for a false return with
the proceeding in mandamus. It did not allow the relator to
join other causes of action with his proceeding for mandamus,
and nothing in the statute suggests that Parliament intended
to create any new basis for recovery or cause of action.

It appears that many state and territorial legislatures
enacted provisions largely identical to the Statute of Anne.
The Oregon territorial legislature followed this pattern in
1851 when it passed "An Act concerning Writs of Mandamus
and Prohibition"(1851). At sections 6 and 7, this statute
provided:

"Sec. 6 Whenever a return shall be made of any such writ, the
person prosecuting such writ may demur or plead to all or any
of the material facts contained in the said return; to which the
person making such return shall reply, take issue, or demur;
and the like proceedings, trial and judgment shall be had
therein for the determination thereof, as might be had if the
person prosecuting said writ had brought his action on the
case for a false return.

"VII. And be it further enacted by the authority aforesaid, That after the said
first day of *Trinity* term, an act made in the fourth year of her Majesty's reign,
intitled, *An act for the amendment of the law, and the better advancement of
justice,* and all the statutes of *Jeofayles,* shall be extended to all writs of
*Mandamus,* and information in nature of a *Quo Warranto,* and proceedings
thereon, for any the matters in this act mentioned."

Sections of the act omitted from the above quotation include: the preamble;
procedures for quo warranto; Section VI, granting the courts discretion as to the
time for responsive pleadings in mandamus and quo warranto; and Section VIII
providing for penalties to persons who obstruct the election of municipal officers.

These provisions were subsequently made applicable to other mandamus cases by
another parliamentary act, St 1 Will IV c. 21 [1830]. *See generally State ex rel
Bautz v. Harper,* 166 Wis 303, 311-312, 165 NW 281, 285 (1917), and cases cited
therein, and J. High, Extraordinary Legal Remedies §§ 457-459 at 443-445 (3d ed
1896).

"Sec. 7 In case a verdict shall be found for the person suing out such writ, or if judgment be given for him on demurrer, or by default, or for want of a replication or any other pleading, he shall recover damages and costs in like manner as he might have done in such action on the case as aforesaid; and a peremptory mandamus shall be granted to him without delay."

Gen. Laws of Oregon 1851, at 178. Although we have no commentary to this act, the language copies that of the Statute of Anne so closely that we cannot doubt that the territorial legislature modeled its act after the English statute. The territorial act had the same intent and effect as the English statute and its American derivatives: procedural consolidation of the action on the case for false return with the mandamus action. Nothing in the history of the statute supports the suggestion that the legislature intended to create a new, substantive cause of action.

The critical change in the statute came in 1853-54. During this period, the legislature undertook a major procedural consolidation of Oregon law. In the frontpiece of the General Laws of Oregon, 1854, there appears an "Advertisement" explaining the marginal notes that appear in the volume. This advertisement states "As the Code abolished the distinctions that formerly existed in civil actions, and modified the forms of practice in many essential respects, * * *. " The change which is significant for this inquiry is the deletion of the specific reference to the action for a false return. "An Act Relating to Writs of Mandamus and Prohibition" stated, at section 12:

"If judgment be given for the applicant, he shall recover the damages which he shall have sustained, to be ascertained by the court or jury, or by referees, as in an action at law, together with his costs and charges; and for such damages, costs and charges an execution may be issued; and a peremptory mandamus shall also be awarded without delay."

Gen. Laws of Oregon 143-144 (1854). The first statute governing damages in mandamus proceedings passed by the state legislature follows so closely from this that it is clear that the legislature in 1862 intended only to refine the language rather than make any substantive changes. Section 591 of the Code of Civil Procedure (Deady's Code, 1862) read:

"If judgment be given for plaintiff, he shall recover the damages which he shall have sustained by reason of the premises, to be ascertained in the same manner as in an action, together with costs and disbursements, and a peremptory mandamus shall be awarded without delay."

Gen. Laws of Oregon 298-199 (Deady 1845-1864). The current provision, ORS 34.210, follows directly from § 591 of Deady's Code. The one change between the 1862 section and the current statute is stylistic. The opening phrase now reads "If judgment is given * * *."

Plaintiff contends that the legislature intended by this statute to create an entirely new cause of action, in which the issuance of a writ would make all damages recoverable, regardless of whether this meant overruling defenses to damages which could not be raised in the return to the writ. This argument is too ambitious. To endorse this view, we would have to asume that the legislature intended to provide an automatic rule of recovery for a relator in damages while leaving a similarly situated plaintiff in tort subject to all defenses to his action. Whether or not a party could recover damages would turn not on the facts, but on whether he pleaded his damages in the petition and these were incorporated into the alternative writ, or brought a separate action.

Given the unquestionable similarity to the earlier territorial acts which procedurally modified the common law actions, we regard the statute of 1862 as maintaining the rules of the earlier actions. In our research, we have found no case which unequivocally supports the position for which plaintiff argues. We decline to endorse it.

Indeed, the key question we find in interpreting these statutes is whether, by the act of 1853-54, the territorial legislature intended to allow a general joinder of actions with the proceeding in mandamus or meant to continue the procedure under the Statute of Anne and the earlier act of 1851, allowing only the combination of the action for a false return.

In this regard, we find the early case of *Warner v. Myers,* 3 Or 218 (1870), indicative. In the early Oregon legal community, the justices of the Supreme Court were doubtlessly familiar with the actions of the legislature and

with its intent in enacting various statutes. Many members of the court were prominent in the formation of the early territorial and state governments. In *Warner v. Myers, supra* at 220, the court stated, "The office of this writ [of mandamus] at common law was precisely what it is now declared to be by our code."

Considering the critical legislative change, that of 1853-54, and the later enactment of the state statute in light of this statement, we conclude that the deletion of the specific reference to an action on the case for a false return was not intended to widen the scope of damages which could be recovered in an action for mandamus. Since the territorial legislature of 1853-54 "abolished the distinctions that formerly existed in civil actions," (Gen. Laws of Oregon, 1854, frontpiece) it was completely logical for them to delete a reference to a specific cause of action. This deletion did not require a change in the substantive law, and we conclude that the legislature did not intend such a change.

■ Therefore we conclude that the plaintiff can recover as damages in a proceeding for a writ of mandamus only those damages which he could have recovered in his common law action for false return. *See also, e.g., Columbia Knickerbocker Trust Co. v. Finney,* 93 Kan 302, 144 P 222 (1914); *McClure v. Scates,* 64 Kan 282, 67 P 856 (1902); *State ex rel. Phillips v. Ford,* 116 Mont 190, 205, 151 P2d 171, 178 (1944), and cases cited therein; *State ex rel. Shea v. Cocking,* 66 Mont 169, 213 P 594, 28 ALR 772 (1923); *Gormally v. Cannon,* 119 RI 771, 383 A2d 582 (1978); *Perry City Council v. State ex rel. Baertich,* 157 Ind App 586, 301 NE2d 219 (1973).

Cases from those jurisdictions which follow this rule, restricting damages in mandamus to those recoverable in an action for a false return, show plainly that these damages are strictly limited. As the Supreme Court of Missouri said:

"[N]o recoverable damages accrue to the relator for that he was compelled to bring mandamus, unless the respondent by making a false return, and thereby raising a false issue of fact, as contradistinguished from pure issues of law, puts the relator to vexation and expense in disproving such

false issue of fact. In such case, and in no other can a successful relator in mandamus recover damages."

*Smith v. Berryman,* 272 Mo 365, 199 SW 165, 166 (1917); *see also State ex rel. Alexander v. Ryan, supra.* In like manner, the Supreme Court of Indiana said,

"[I]t is the subjection of the plaintiff to the rigors, vexation, and expense of trial on issues of fact, upon which the right to an order compelling performance depends, which is the injury for which damages have been and should remain recoverable. Accordingly, successful plaintiffs under our statute are entitled to recover damages for all injuries flowing as a natural and probable consequence of the subjection to such trials."

*Indiana Alcoholic Beverage Commission, supra,* 379 NE2d at 144; *see also* Merrill, *supra.*

These cases show clearly that to recover in an action for a false return plaintiff must allege and prove "the return of the respondents in the mandamus case was in fact false, * * * [or] although true in fact was false in intent, this is, that respondents in their return failed to state the real reasons for refusing to act." *Yates v. Durk,* 464 SW2d 43, 47 (Mo App 1971). Plaintiff herein makes no such allegation. It has not contended at any stage of these proceedings that the return of the defendants was false. Accordingly "[s]ince there is no claim in this case that defendants' answer was false, there can be no award of damages." *Gormally v. Cannon,* 119 RI 771, 383 A2d 582, 586 (1978).

The damages which plaintiff seeks to recover are not based on any allegation of falsehood in defendants' return to the alternative writ. Rather, the damages stem from the defendants' action which gave rise to the action for mandamus. These damages are not recoverable in an action for a false return. The damages contemplated by an action for a false return are those which plaintiff incurs in the trial of the mandamus proceedings themselves, not those arising directly from the prior preclusion which plaintiff has invoked the writ to redress. *See State ex rel Phillips v. Ford,* 116 Mont 190, 205, 151 P2d 171, 178 (1944); *Thrasher v. Van Buren Township of Monroe County,* ___ Ind App ___, 394 NE2d 215 (1979).

Accordingly, since plaintiff has presented a claim which clearly does not fall within the elements of the action for a false return, and since this is the only action which can give rise to damages in a proceeding for a writ of mandamus, we conclude that plaintiff cannot recover damages on the claim it presents. Therefore, the judgment of the Court of Appeals is affirmed.

Affirmed.